Johnson, Chancellor.
Ordered, on examining this application and the accompanying exhibits, that the petitioner be, and she is hereby admitted a complainant, and authorized to conduct the suit; in doing which, the rules laid down by my predecessor, in the case of Labes v. Monker at July term, 1821, must be pursued.(a)
*131 After which this new plaintiff, Elizabeth Mall, having abated her suit by her marriage with John B. Bayliss, they filed their petition, stating the fact, and praying to have it revived in the mode allowed, by the act of 1820, ch. 161; which petition they submitted without argument.
30th October, 1826. — Bland, Chancellor.- — -It is perfectly obvious, that the fourth, fifth, sixth, and seventh sections of the act of 1820, ch. 161, have done nothing more than to authorize a party to pursue the course therein prescribed in place of a bill of revivor. It is declared, that if a party shall die, “ it shall not be necessary to file a bill of revivor,” but that this new method may be taken for renovating the suit. The act has neither expressly nor impliedly .abrogated the mode of reviving a suit by bill of reviVor; but has only given this new method of proceeding as an additional mode of attaining that object, which before could only be effected by a *132 bill of revivor. But it is a new course of proceeding, which can only be used in place of a mere naked bill of revivor, by which the person in whom the title is vested, is the sole fact to be ascertained, and nothing more. It can be resorted to in no case, except that of a devisee, where a proper bill of revivor will not lie; nor can it be used in any case for the purpose of performing the office of a mere bill of revivor, but where an abatement has happened by death ;(b) for, it is expressly confined to the case of a bill in chancery, where “ either or any of the parties shall die or shall have died.’’’’ And not being repugnant to, nor having superseded any other mode of proceeding; nor authorized or contemplated the, revival of a suit in any case where it was before deemed illegal or unnecessary to have it revived'; it follows, that it can apply to no case like the present, where the suit has been abated by the marriage of a female plaintiff; nor can it authorize or require a revival on the marriage of a female defendant, which, not operating as an abatement, did not call for a revival ;(c) nor can it apply to any case, except that of a devisee, where, because of the new party’s *133 not claiming by operation of law only, a mere bill of revivor will not lie; nor can it be resorted to by a defendant as a means of reviving the suit' in any case, except after a decree when he can derive a bénefit from the further proceedings, and the plaintiff neglects to revive: for no man can be compelled to revive and prosecute a suit, who can have no possible advantage from it.(d) And as it cannot be presumed, that- the mode of proceeding prescribed by this law was intended to stand as an addition to any pre-existing and similar mode of proceeding, which was, in its nature, more cheap, simple, and expeditious ; it therefore cannot be considered as having been intended to apply to any case of an abatement, after a decree, where the suit may and ought to be revived by a subpoena scire f acias. (e)
It must also be recollected, that the form of proceeding, under this act of assembly, as laid down in the case of Labes v. Monker, refers only to a case where the representative of a deceased party applies to be admitted in his place; for, the act evidently contemplates a different mode of - proceeding, where the surviving party proposes to revive the suit against the representatives of a deceased party. But as it is sufficiently obvious, that a suit cannot be revived in the mode prescribed by this act, which has been abated, as in this instance, by the marriage of' a female plaintiff,
It is therefore ordered, that this petition be dismissed, with costs, to be taxed by the register.
Whereupon Bayliss and wife' filed a bill of revivor, stating the fact of their marriage, which being admitted, and an answer to the bill of revivor, for that purpose, having been dispensed with, by consent, and the case considered as having been thug revived, it was brought before the court accordingly upon its merits.
1st January, 1827. — Bland, Chancellor. — This case standing ready for hearing, and the solicitors of the parties having been fully heard, the proceedings were read and considered.
This suit has been instituted to recover a legacy given by the late Thomas Hall to his son William W. Hall, the late plaintiff. This Thomas Hall, in the lifetime of his wife, had, besides the late complainant, William W. Hall, seven other children; and was then in possession of personal property to a considerable amount in *134 value; and was seized of two tracts of land, as tenant in tail male; and of other parcels of land, in fee simple. Under which circumstances he made his will, wherein he says : “ I request my executors, hereafter named, to dispose of all my estate, both real and personal, except some legacies, hereafter mentioned, to the best advantage, and after having first paid all my just 'debts, out of the sales of my personal property, to pay unto my wife Isabella, one third part of the remaining balance, which the law gives her.” And he then goes on to dispose of his estate among his children; giving to his son William W. Hall, the late complainant, one thousand pounds.
Soon after making this will, Thomas Hall died. Whereupon the late plaintiff, William W. Hall, as heir in tail, entered upon, held and disposed of the entailed estate to his own use. In consequence of which, Edward Hall and William Hall, the executors of Thomas Hall, deceased, refused to pay William W. Hall the legacy given him by his late father; alleging, that he could not be thus permitted to disappoint the will of their testator, by taking both the estate tail and the legacy; since the estate tail constituted a material part of the fund, out of which the legacy was given. And, to shew that such was the intention of their testator, they exhibited, as a part of their answer, a paper purporting to be a schedule, made by him, of all his estate, and upon which, as they allege, he predicated his will. But this schedule has neither been admitted nor established by proof; and therefore cannot be permitted to have any bearing whatever upon this case. From the pleadings, proofs, and agreements of the parties, it appears, that the whole controversy has been reduced to a single question; that is, whether William W. Hall can be put to his election to take either the entailed estate or the legacy; or be allowed to have both ?
Wherever- a testator devises a part of his estate to one, who has a claim upon it independently of him; it is a settled principle of equity, that the devisée shall not be allowed 'to disappoint the express, or obvious intention of the testator by.taking both; to insist upon his claim, to its full extent, and also to take all the benefit bestowed upon him by the will. The devise, in such cases, is considered, in equity, as having been made upon an implied condition, that the claim shall be waived; and therefore the devisee ’will be bound to make his election to abide by the will, and take under it entirely, relinquishing his claim; or to abandon the will altogether.
*135 But then the intention of the testator, that such devisee should be put to an election, must be either distinctly expressed, or very strongly manifested by facts and circumstances; for, no one can be stripped of his rights by guessing or conjecture. It must distinctly appear, that the claim is irreconcilable and incompatible with the devise; or that 'to sustain the claim, would throw the testator’s estate into a channel entirely different from that in which he had placed it by his will. To prevent such a perversion, or disappointment of the express, or clearly manifested intention of the testator, a court of equity will, by a strong operation of its powers, put the devisee to an election.(f) But there is no instance of a devisee being made to elect upon slight presumptions or inferences; or where the will might have its full effect without impairing the obligation of the claim; or where the testator has property, which is absolutely his own, answering fully to the description of that spoken of in his will, and by which all its expressions may be satisfied. (g)
In this case, it appears that the testator had a considerable real estate, in fee simple, by which his expressions, “ all my estate, real and personal,” may be amply gratified without embracing the entailed estate. There is nothing upon the face of the will itself, nor any thing in the circumstances under which it was made, which necessarily or very clearly shews an intention to comprehend the entailed as well as the fee simple estate. Although the testator might, during his lifetime, have aliened the lands which he held as tenant in tail, by a mere deed of bargain and sale, legally executed and recorded; and thus have barred the right of the heir in tail; yet, it is very certain, that he could not devise those lands by his last will and testament. (h) Upon the whole, then, it is my opinion, that the plaintiffs are entitled to recover; and the amount in such case having been agreed upon; it is thereupon,
Decreed, thát Edward Hall, the surviving executor of the late Thomas Hall, forthwith pay unto the claimants, John B. Bayliss and Elizabeth his wife, as' administrators of William W. Hall deceased, the sum of $2666 66, or that the said defendant bring the same into this court to be paid to the said complainants; the *136 said sum of lawful money being the value, and in satisfaction of the legacy given by the late Thomas Hall to the late William W. Hall, as in the proceedings mentioned. Decreed, that the defendant and complainants each pay their own costs. Decreed, that the bill of complaint be dismissed as to all the other defendants, with costs.
From this decree the defendant appealed, and on the 22d July, 1829, it was affirmed by the Court of Appeals.

 Labes v. Monker. — This bill was filed on the 8th of June, 1820, by James Labes, against William Monker and John C. S. Monker, to set aside a conveyance of a certain chattel real, made by the defendant William to the defendant John-, on the ground, that it had been fraudulently made-to defeat a judgment at law obtained by the plaintiff against the defendant William ; upon which judgment the plaintiff had issued an execution, and had it returned without its having been delivered to tire sherilf; after which he had issued another fieri facias, upon which the sheriff had returned nulla bona. The plaintiff, by his bill, prayed, that the deed might be declared void ; and, that he might be relieved according to the equity and nature of his case.
The defendants were summoned, and both of them appeared, but failed to answer the bill. After which the solicitor of the plaintiff came into court, and suggested his client’s death, and moved, that his legal representatives might be made parties.
*131 13ih July, 1821. — Kilty, Chancellor. — A motion was made by counsel for a new party to be entered on the death of the complainant, under the act of 1820, ch. 161; and some observations were made by other counsel, with a view to the future practice.
On considering the act, the following decisions are made as to the present motion, which will, of course, serve in future cases. - •
1st. The application must be by petition or motion, reduced to writing, suggesting the death, and praying to be made a party.
2d. By this act the court is to be satisfied of the death, and of the applicant’s being the legal representative; which cannot be done 'without some proof. The proof required, will be an exhibijion of the letters, or an exemplification thereof, or a certificate of the register, under seal, of their having been issued; or an affidavit of, the death and administration.
3d. An order will then be passed, by the court, to admit such applicant as a party in place of the deceased.
4th. A minute of the application, and of the order, is to be entered on the docket by the register.
5th. The notice of the admission required by the act shall be given to the opposite party or parties, if residing, or found within the State, by serving an attested copy of the order, or leaving it at their usual place of abode; on proof of which being filed, the new party may proceed in the suit, and not before.
6th. If the opposite party resides out of the State, a form of publication must be prepared, stating briefly the application, and order of admission, with the following conclusion, viz. “It is thereupon ordered, that the said - give notice of his admission as aforesaid, by causing a copy of this order to be published at least once in each of three successive weeks in the -•, to the end, that the opposite party may shew cause, if any he hath, to the contrary, on or before the-day of-.”
In deciding on the construction of the 4th section of the act, I have considered, that it is not, in any way, affected by the directions in the 7th section; and also, that it is not to be regulated by the practice of the courts of law, under the act of 1785, the words of which are, that the appearance of the executor, &c., shall be admitted to be entered.

 It seems to have been the ancient practice of this court, in such cases of abatement, to enter upon the docket a suggestion of the death of the party; and then, as a matter of course, to add, “Leave given to file a bill of revivor;” in all such cases as might be revived, (Wilmot v. Taylor, 1771, Chan. Pro. lib. W. K. No. 1, page 31— a similar entry 1762, Chan. Pro. lib. D. D. No. J. page 57.) But this practice was altered.
July term, 1806. — Kilty, Chancellor. — Ordered, that whore an entry has been made on the docket of “Leave to file a Bill of Revivor,” in any case which ought to abate by the death of a party, the said entry be stricken out, and the suit entered “ abated.” And that such suit be not brought forward or continued on the docket until a bill of revivor shall be filed; — and that in future cases the entries be made according to this order. The Chancellor considering, that the provision in the act of 1785, ch. 80, on this subject, extends only to suits at law

 The act of 1831, ch. 311, s. 14, declares, “that no suit in equity shall abate by the marriage of any of the parties,” &e., which, it is presumed, must be construed to mean any of the parties, plaintiffs; and that, although the suit may have been actually abated by the marriage of a female plaintiff, yet that it may, as therein prescribed, be revived.
Manning v. Mills, 1722. — Bill abated, with costs, by reason of the complainant’s intermarriage with one Combs.— Chancery Records, lib. P. L. 785.
Taylor v. Gordon, 1728. — Service of subpeena being proved, Ordered, attachment to issue unless appearance July court next. Petition for dedimus to taire answer. Dedimus issued. Ruled attachment to issue for answer, and contempt to be paid and further process unless answer within ten days of this court. Attachment. The defendant being lately married to Nicholas Ridgely, ordered, that he be made parly, and that attachment of contempt issue against him and defendant, Ann, his wife. After which, Nicholas came in accordingly with his wife, and answered. — Chancery Records, lib. P. L. 1001 — 1083.

 1 Mont. Dig. 303; 2 Mad. Chan. 526; Beams’ Plea. 287.

 1 Harr. Pra. Chan. 669; 2 Fow. Ex. Pra. 419; Mitf. Pl. 69.

 Noys v. Mordaunt, 2 Vern. 581; 2 Mad. Chan. 51; Blake v. Bunbury, 4 Bro. C. C. 21; Sheddon v. Goodrich, 8 Ves. 482; Dillon v. Parker, 1 Swan, 359.

 Pow. Devi. 465.

 Paca v. Forwood, 2 H. & McH. 175; Laidler v. Young’s Lessee, 2 H. & J. 69.